**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| William M. Luce, on behalf of himself and all similarly situated natural persons, | Case No. ___3:22-cv-03898-MGL___ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Lexington County Health Services District, Inc., Brian D. Smith in both his official and individual capacity, and Lynn Coggins in both her official and individual capacity, | (Putative Class Action) (Jury Trial Demanded) |
| Defendants. | |

Plaintiff ("**Luce**"), on behalf of himself and all others similarly situated (the "**Putative Class**"), brings this action against Lexington County Health Services District, Inc. ("**LMC")** and two (2) of its officers or managers, Brian D. Smith ("**Smith**") and Lynn Coggins ("**Coggins**") to: obtain an injunction against their unlawful withholding and diversion of Luce and the Putative Class's wages to the South Carolina Public Employee Benefits Authority ("**PEBA**") for use by the South Carolina Retirement System ("**SCRS**"); and obtain all remedies available in law or equity under 42 U.S.C. § 1983, S.C. Code Ann. § 41-10-80, and 28 U.S.C. § 2201.

Luce intends to amend this Complaint under Fed. R. Civ. P. Rules 15 and 21 if he discovers that any other officers or managers of LMC have directed or enforced LMC's unlawful policies, practices and customs of mischaracterizing Excluded Wages as "overtime," of mischaracterizing all "overtime" worked at LMC as "mandatory," and of unlawfully withholding and diverting Excluded Wages earned by Luce and the Putative Class to PEBA for use by SCRS.

**JURISDICTION AND VENUE**

1.       LMC is a regional health services district formed by Lexington County under the authority of S.C. Code § 44-7-2010. LMC's principal office is located at 2720 Sunset Boulevard

in West Columbia. LMC is Luce's employer, and it either employs or has employed each member of the Putative Class (as defined below).

2.     Coggins is an individual who is a citizen of South Carolina. At all times relevant to this Complaint, Coggins has worked as LMC's Accounting Manager and has acted under the color of state law when misclassifying Luce and the Putative Class's Excluded Wages (as defined below) as "overtime pay" "mandated by" LMC and directing the withholding and diversion of Luce's and the Putative Class's earned wages to PEBA for use by SCRS.

3.     Smith is an individual who is a citizen of South Carolina. At all times relevant to this Complaint, Smith has worked as LMC's Vice President of Human Resources and has acted under the color of state law when misclassifying Luce and the Putative Class's Excluded Wages (as defined below) as "overtime pay" "mandated by" LMC and directing the withholding and diversion of Luce's and the Putative Class's earned wages to PEBA for use by SCRS.

4.     Because Luce seeks relief under 42 U.S.C. § 1983, this court possesses subject matter jurisdiction over the claims asserted herein under 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

5.     Venue is proper in this district under 28 U.S.C. § 1391(b) because one or more of the Defendants reside in or maintain their principal place of business in this division and the most substantial part of the events or omissions giving rise to the claims below occurred in this division.

## THE PUTATIVE CLASS

6.     Pursuant to Fed. R. Civ. P. Rule 23, Luce brings this action on behalf of himself and the Putative Class, who are:

> All individuals who have earned wages: (1) as an LMC employee at any time since October 2019; (2) that are nonrecurring pay increases, single payments, bonuses, incentive-type payments, or any other wage payments other than their regular salary base or employer-mandated overtime; (3) that have been diverted to PEBA on or after November 4, 2019, for use by SCRS rather than paid to the employee.

7.      Luce reserves the right to redefine the Putative Class prior to notice, and thereafter, as may be warranted or necessary.

<u>COMMON FACTUAL ALLEGATIONS</u>

**A. The South Carolina Retirement System**

8.      In 2012, the South Carolina Legislature (the "State") passed Act No. 278, which created PEBA as an agency of the State and incorporated SCRS into PEBA.

9.      Act No. 278 instituted several types of retirement reform for SCRS members; most relevant to this action, Act No. 278 limited the definition of "**earnable compensation**" by excluding from "earnable compensation" all "overtime pay not mandated by the employer." [codified at S.C. Code § 9-1-10(8)(b) (2019)].

10.     In 2017, the State passed Act No. 13, which increased the percentage of earnable compensation that employees who are members of SCRS must contribute to nine percent (9%).

11.     SCRS represents a massive public benefit. SCRS has over 550,000 active members, inactive members, retirees and beneficiaries. As of June 30, 2022, SCRS held assets that exceeded $32.8 billion in value.[1]  The State Senate Finance Committee has a Retirement Systems Standing Subcommittee that has regular meetings and receives regular reports, presentations and testimony from PEBA, the South Carolina Retirement System Investment Commission, and others to monitor the effects of the State's legislation and make reforms to this public benefit.

12.     SCRS is not a defined contribution plan (like the common 401(k) plan) where employees and occasionally employers contribute to their own investment account that can be controlled by the employee and can be rolled over into another account if they leave employment. Rather, SCRS is a defined benefit pension plan, which promises employees a set benefit at

---

[1] https://peba.sc.gov/sites/default/files/retirement_financials.pdf, p. 16 of YE financial statement

retirement that is determined on either twelve (12) highest or twenty (20) highest consecutive quarters of earnable compensation and that is dependent on an application and the employee's satisfaction of eligibility thresholds, e.g. age, years of service within State employment, and mortality.

13.     Under State law[2], participating employers are to withhold contributions only from member employee's earnable compensation and direct that money to PEBA for use by SCRS.

14.     To ensure that payroll personnel of employers like LMC understand what constitutes earnable compensation subject to the Employee Contribution Law, PEBA releases a "**Covered Employers Procedures Manual**" each fiscal year.  For each of the fiscal years relevant to this Complaint (Fiscal Years 2020-2023), the Covered Employers Procedures Manual has said:

> Nonrecurring pay increases or single payments made at retirement, bonuses and incentive-type payments, or any other payments not considered part of the regular salary base, whether paid during employment or at retirement, are not subject to contributions.[3]

15.     The Employee Contribution Law requires LMC to certify to PEBA's "board on each and every payroll or in such other manner as the board may prescribe the amounts to be deducted" from each employees' earnable compensation.

**B.  Luce's earnings of Excluded Wages**

16.     Luce is a licensed Certified Registered Nurse Anesthetist ("**CRNA**") and has worked as an at-will employee in that capacity for LMC at all times relevant to this Complaint.

---

[2] S.C. Code §§ 9-1-10(8)(b), 9-1-1020, and 9-1-1085 [together, the "**Employee Contribution Law**"].

[3] The current "Covered Employers Procedures Manual" is available online at PEBA's website at https://www.peba.sc.gov/sites/default/files/er_manual.pdf; the versions of  the "Covered Employers Procedures Manual" for fiscal years 2020, 2021, and 2022 are available at https://dc.statelibrary.sc.gov/.

17.     Prior to October 15, 2019, and always since, Luce has participated in and contributed to SCRS through the wages he has earned by working for LMC, which LMC pays on a biweekly basis and reports to Luce on a paystub.

18.     Between October 2019 and May 14, 2022, Luce's regular salary base with LMC was $4,159.50/week; on May 15, 2022, it increased to $4,240.00/week. At all times relevant to this Complaint, LMC has issued pay stubs to Luce charactering LMC's payment of $4,159.50/week and then $4,420.00/week, as its payment of Luce's "**Regular Base Pay**."

19.     Since October 15, 2019, LMC has employed properly educated and trained human resource and accounting officers and managers who:

   a.   are familiar with the Fair Labor Standards Act of 1938, 29 U.S.C. § 203, as amended and 29 C.F.R. § 541.301 (the "**FLSA**");

   b.   who understand the difference between an exempt and non-exempt employee under the FLSA;

   c.   who understand the requirements for the payment of overtime under the FLSA;

   d.   who understand the FLSA's recordkeeping requirements;

   e.   who understand LMC's participation as an employer in SCRS;

   f.   who understand the contribution requirements of employees that are SCRS members under State law;

   g.   who have access to and understand PEBA's Covered Employers Procedures Manual; and

   h.   who perform the certifications required to PEBA under S.C. Code § 9-1-1020.

20.     As a CRNA with a base salary exceeding $684 per week, Luce has been, at all times relevant to this Complaint, exempt from receiving any overtime payments under the FLSA.

21.     Since October 15, 2019, LMC has classified Luce as an exempt employee for purposes of the FLSA. LMC has never: (a) recognized nor treated Luce as a non-exempt employee under the FLSA; (b) mandated that Luce work any "overtime;" or (c) made any payment to Luce that LMC disclosed to Luce, on his paystub or otherwise, as "overtime pay."

22.     On many occasions since October 15, 2019, Luce has voluntarily signed up and agreed to work weekends, holidays, night shifts, 24-hours shifts, call, and other undesirable work because LMC offers and incentivizes Luce and other professionals employed at LMC to do so with the promise of pay in addition to their salary base, e.g. premium pay, call pay, and shift differentials.

23.     The wages that Defendants were obligated to pay Luce and the Putative on or after November 4, 2019, because he or she volunteered or signed up for and worked extra hours, lengthy shifts, call, and undesirable nights, weekends and holidays are "nonrecurring pay increases," "bonuses and incentive-type payments," or "other payments not considered part of the regular salary base" ["**Excluded Wages**"] that are not subject to withholding and diversion under PEBA's instructions and the Employee Contribution Law.

24.     Therefore, there exists no reasonable basis for Defendants to adopt and enforce any policy, practice, or custom against Luce or the Putative Class that treats their Excluded Wages as "overtime pay" "mandated by" LMC. The only foreseeable reason Defendants would do so is that a blanket policy, practice or custom of mischaracterizing all actual overtime and all Excluded Wages as "overtime pay" "mandated by" LMC is that it simplifies Defendants' payroll process.

**C. Defendants' improper withholding and diversion of Luce and the Putative Class's Excluded Wages to PEBA for use by SCRS**

25.     In or around April 2022, Luce realized that LMC was withholding and diverting nine percent (9%) of his Excluded Wages to PEBA for use by SCRS.

26.     Since November 4, 2019, Luce's pay stubs issued by LMC confirm that LMC has withheld and diverted to PEBA for use by SCRS over $12,000 of wages Luce has earned that were neither part of his Regular Base Pay nor "overtime pay" "mandated by" LMC.

27.     Luce began internally reporting LMC's unlawful practice of withholding and diverting his and the Putative Class's Excluded Wages in April 2022.

28.     In April 2022, Luce had communications with Tyajuana Mealing ("**Mealing**") and Lashaun McFarland ("**McFarland**") to advise that he was not being paid all his Excluded Wages because LMC was withholding and diverting nine percent (9%) of those payments to PEBA for use by SCRS in violation of state law.

29.     Following Luce's notice, Mealing consulted with George Hazin ("**Hazin**"), an employee at PEBA, on April 22, 2022. Durig this consultation, Mealing mischaracterized Luce's Excluded Wages as "overtime payments" in this communication despite the fact Mealing knew or should have known that Luce is treated by LMC as an exempt employee under the FLSA and does not receive any "overtime pay" from LMC.

30.     Hazin advised Mealing that LMC should not be withholding wages and diverting those to PEBA for use by SCRS employee contributions from any "voluntary overtime." Mealing sent Hazin's instruction to McFarland.

31.     On Friday, April 22, 2022, McFarland sent Luce's report and Hazin's instruction to an email distribution group within LMC referred to as the "**Payroll Group**." Upon information and belief, the Payroll Group included Coggins, McFarland, Mealing, Keri Lovett ("**Lovett**"), Lori Mcewen ("**Mcewen**"), and Lisa McPherson ("**McPherson**").

32.     On April 25, 2022, Coggins responded to Luce's report and Hazin's instruction by sending an email to the Payroll Group articulating and standing behind LMC's unlawful policy,

practice and custom: "all overtime is considered mandatory at LMC so that is how we report it."

33.    LMC's adoption and enforcement of a policy that treats all "overtime" worked by all employees – exempt or otherwise – as mandatory, whether it was in fact mandatory or not, is manifestly unreasonable and in contravention of Act No. 278 and the Employee Contribution Law.

34.    Luce continued to follow up with Coggins in May 2022 to explain that the Excluded Wages he were not part of his base salary pay or "overtime pay" "mandated by" LMC, but were in fact wages that LMC was not allowed to withhold and divert to PEBA for use by SCRS.

35.    In May 2022, Coggins reported to Luce that, in response to his report, she had consulted with two (2) managers at PEBA, Denise Rodriguez ("**Rodriguez**") and Charlotte "Charlie" Robertson ("**Robertson**").

36.    A PEBA customer service representative had already informed Luce that PEBA could not help him because employee contributions are set out by LMC's accounting department and PEBA has no basis to dispute that information. However, based on his communications with Coggins, Luce communicated with Rodriguez directly, who advised Luce that "LMC just does things their own way," but confirmed that, because LMC was reporting his Excluded Wages as "overtime pay" "mandated by" LMC, there was nothing PEBA could do to address his report.

37.    Coggins continues to direct, approve and enforce LMC's improper policy, practice, and custom of improperly characterizing and treating Luce's and the Putative Class's Excluded Wages as "overtime pay" "mandated by" LMC subject to withholding under the Employee Contribution Law; and she continues to direct, approve and conduct her department's failure to repay any of the improperly withheld and diverted Excluded Wages to Luce and the Putative Class.

38.    Given Coggins's actual knowledge of Luce's reports, the instructions provided by PEBA, her familiarity with the FLSA and the meaning of "overtime," and her understanding of

the fact that professionals at LMC regularly volunteer for non-mandatory call and shifts in exchange for the Exempt Pay that LMC offers its employees, Coggins's enforcement of LMC's unlawful policies, practices and customs is reckless and demonstrates her callous indifference to Luce and the Putative Class's right to receive and control their earned wages that are not lawfully subject to withholding or deduction.

39.     After he was unable to obtain relief from Coggins and her accounting department, Luce continued to report this misconduct and pursue relief internally with LMC's upper management. In August 2022, Luce had communications about LMC's improper policies and practices of withholding SCRS employee contributions from Excluded Wages with Jay Hamm, LMC's Vice President of Operations ("**Hamm**"). Luce asked Hamm if he would permit Luce to meet and discuss these concerns with LMC's in-house legal counsel.

40.     Instead of permitting Luce to speak to LMC's legal department, Hamm forwarded Luce's concerns to Smith, LMC's Vice President of Human Resources, on or about August 10, 2022.

41.     In September 2022, Luce communicated twice by phone with Smith regarding LMC's improper policies, practices, and customs of withholding and diverting nine percent (9%) of his and the Putative Class's Excluded Wages to PEBA for use by SCRS over the past ten (10) years.

42.     On the first call, Smith represented to Luce that he would send Luce's report out of the hospital for a third-party review.  Smith told Luce that if Luce had been the only person affected by this, he could "remedy" the situation, but he said it will be problematic to resolve this problem because it involved a lot of people. On his second call, Smith simply informed Luce that his position remained unchanged since their first call.

43. Smith continues to direct, approve and enforce LMC's improper policies, practices and customs of improperly characterizing and treating Luce's and the Putative Class's Excluded Wages as "overtime pay" "mandated by" LMC subject to withholding under the Employee Contribution Law, and he continues to direct and approve of LMC's failure to repay any of the improperly withheld and diverted Excluded Wages to Luce and the Putative Class.

44. Given Smith's actual knowledge of Luce's reports, his familiarity with or access to PEBA's Covered Employers Procedures Manual, his familiarity with the FLSA and the meaning of "overtime," and his understanding of the fact that professionals at LMC regularly volunteer for non-mandatory call and shifts in exchange for the Exempt Pay that LMC offers its employees, Smith's enforcement of LMC's unlawful policies, practices and customs is reckless and demonstrates callous indifference to Luce and the Putative Class's right to receive and control their earned wages that are not lawfully subject to withholding or deduction.

45. LMC, under the management of Smith and Coggins, continues to adhere to its improper policies, practices, and customs of mischaracterizing Excluded Wages as "overtime pay" "mandated by" LMC, of mischaracterizing "all overtime" as "mandatory" whether it was actually mandated or voluntarily undertaken by the employee, and of withholding and diverting to PEBA for use by SCRS nine percent (9%) of the Excluded Wages owed to Luce and the Putative Class.

46. Therefore, Luce and the Putative Class are entitled to declaratory and injunctive relief to prevent further loss and harm them, and he and the Putative Class are entitled to an award of damages and other remedies available at law, including nominal damages, actual and compensatory damages, treble damages, punitive damages as to Coggins and Smith, prejudgment interest, the costs of this action, and reasonable attorneys' fees as provided for by law.

<u>**A**DDITIONAL **C**LASS **A**LLEGATIONS</u>

47.     This action may properly be maintained as a class action under federal law and satisfies the numerosity, commonality, typicality, and adequacy requirements for maintaining a class action under Fed. R. Civ. P. Rule 23(a).

48.     Members of the Putative Class are so numerous as to make joinder of all members impracticable. Luce is informed and believe that the number of individuals in the Putative Class is in the hundreds or thousands; Luce is informed and believes that the Putative Class consists of the professionals employed at LMC, such as Registered Nurses, Advance Practice Registered Nurses, other professional providers employed since October 2019 who are members of SCRS and did not earn a base salary in excess of the compensation limits provided in Section 401(a)(17) of the IRC.[4]

49.     Joinder of all the individuals Luce believes to be a part of the Putative Class is impracticable because of the large number of individuals affected and the fact that the Putative Class includes individuals who are no longer employed by LMC and have relocated to other geographic regions.

50.     Common questions of law and fact exist as to all members of the Putative Class, and these common questions predominate the individual questions:

a.     All members of the Putative Class are current or former LMC employees who worked during Coggins and Smith's professional tenure at LMC and were subject to the Defendants' enforcement of LMC's unlawful policies, procedures, and customs that systemically mischaracterized Exempt Payments as "overtime pay" "mandated by" LMC.

b.     All members of the Putative Class were enrolled as members of SCRS at some time

---

[4] These caps were $280,000 for calendar year 2019; $285,000 for calendar year 2020; $290,000 for calendar year 2021; and $305,000 for calendar year 2022.

over the past three (3) years and were subject to the same mandates of State law and PEBA regarding contributions by members of SCRS.

c.   All members of the Putative Class require resolution of whether Defendants' withholding and diversion of the Putative Class's earnings to the SCRS violates the Takings Clause of the Fifth Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment of the United States Constitution;

d.   All members of the Putative Class require resolution of whether Defendants were operating under color of any statute, ordinance, regulation, custom, or usage, of the State when depriving them of portions of their Excluded Wages;

e.   All members of the Putative Class require resolution of whether Smith and Coggins, or any other individuals that may be identified and named in this action, acted in a manner that makes them liable for punitive damages under 42 U.S.C. § 1983;

f.   All members of the Putative Class require resolution of whether the question of whether Smith and Coggins, or any other individuals that are "agents or officers" of LMC that may be named in this action upon discovery, are "employers" under S.C. Code Ann. § 41-10-10 that may have liability under S.C. Code Ann. § 41-10-80;

g.   All members of the Putative Class require resolution of whether the Defendants' withholding and diversion of the Excluded Wages to PEBA for use by SCRS violates S.C. Code 41-10-40;

h.   All members of the Putative Class require resolution of whether Defendants had any good faith wage dispute or whether LMC's policies, practices, and customs

were plainly unreasonable, entitling those employees whose wages were unlawfully withheld and diverted to an award of treble damages and attorneys' fees under S.C. Code Ann. § 41-10-80;

i.  All members of the Putative Class require resolution of whether this court should issue judgment under 28 U.S.C. § 2201, declaring that the Defendants policies and practices of withholding and diverting the Excluded Wages violates the Takings Clause of the Fifth Amendment and the South Carolina Payment of Wages Act and whether this court should issue an injunction prohibiting these policies and practices.

51.    Luce's claims are typical of the claims of all members of the Putative Class as it is defined. Like the other learned medical professionals that constitute the Putative Class, Luce has volunteered by signing up and working extra hours, call, lengthy shifts, and undesirable nights, weekends and holidays because he was incentivized by the Excluded Wages LMC offered him and his co-workers to do it. Defendants have adopted and enforced illegal policies and practices, directed toward all Luce and the Putative Class in an identical manner, whereby the Defendants mischaracterize Excluded Wages earned by Luce and the Putative Class as "overtime pay" "mandated by" LMC. Consequently, all claims are premised on the same legal theories.

52.    Considering that Luce has been deprived of at least $12,000 of earned wages and remains an employee of LMC and member of SCRS subject to Defendants' ongoing enforcement of their unlawful policies, practices and customs, Luce possesses requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the members of the class. His interests are coincident with and not antagonistic to those of the Putative Class.

53.    Luce has retained the undersigned counsel who, together, have over eighty (80)

years of experience as litigation counsel and who possess the resources to successfully prosecute this action against the Defendants and the requisite experience and success in wage and hour litigation, class action litigation and other complex commercial and financial litigation involving LMC and other government entities and courtroom practice.

54.     The undersigned counsel knows of no conflicts among members of the Putative Class, or between counsel and members of the Putative Class.

55.     This action satisfies the requirements for maintaining a class action under Fed. R. Civ. P. Rule 23(b)(1):

a.  Prosecution of separate actions by individual members of the Putative Class would create a risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for Defendants regarding the policies and procedures described above, or could as a practical matter be dispositive of interests of the other class members or substantially impair or impede their ability to protect their interests.

b.  The prosecution of separate actions by individual members of the Putative Class could lead to inconsistent results with respect to other members of the Putative Class since the Defendants' unlawful policies, practices and customs whereby Defendants withhold and diver Excluded Wages are either legal or illegal as to Plaintiff and the entire Putative Class or not.

c.  For the same reason, an adjudication with respect to Luce would, as a practical matter, be dispositive of the interests of the members of the Putative Class. If Defendants' policies and practices that serve the basis of Defendants' withholding and diversion of Excluded Wages are illegal as to Luce, then they are illegal as to

the entire Putative Class.

    d.   A decision that the Defendants violated federal and State laws and Constitutions would require Defendants to take uniform remedial action. An individual suit by each member of the Putative Class to redress the wrong common to all of them would be contrary to the spirit and intent of Rule 23.

56.     In addition to certification under Rule 23(b)(1), and in the alternative, Luce seeks certification under Fed. R. Civ. P. Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to Luce and the Putative Class. As stated above, Defendants illegally withheld and diverted to PEBA for use by SCRS a percentage of the Excluded Wages that Luce and the Putative Class were required to be paid on or after November 4, 2019. Accordingly, injunctive and declaratory relief with respect to the entire Putative Class is appropriate.

**FOR A FIRST CAUSE OF ACTION**
**(28 U.S.C. § 2201 – Claim for Declaratory Judgment)**

57.     All foregoing paragraphs are incorporated herein verbatim.

58.     As set forth above, there exists an actual controversy between Luce and the Putative Class, in the first part, and the Defendants in the second part, as to whether Defendants' diversion of a percentage of Luce's Excluded Wages violates the Takings Clause of the Fifth Amendment to the United States Constitution, Article I, Section 13(A) of the South Carolina Constitution, and the South Carolina Payment of Wages Act.

59.     Unless the Court issues an appropriate declaration of rights, Defendants' reckless and callous indifference to federal and state law, and PEBA's instructions, will lead the Defendants to continue their improper policies, practices, and customs of withholding and diverting a percentage of Excluded Wages earned by Luce and the Punitive Class to PEBA for use by SCRS, and there will continue to be disputes and controversy surrounding these actions.

60.     Therefore, Luce, for himself and the Putative Class, hereby seeks declaratory relief and a judicial determination pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. Rule 57 as follows:

a. That Defendants' policies, practices, and customs of treating "all overtime" worked at LMC as employer mandated is in violation of Act No. 278, as amended and codified in S.C. Code §§ 9-1-10(8)(b), 9-1-1020, 9-1-1085.

b. That the wages that were due to be paid on or after November 4, 2019, to Luce and the members of Putative Class because he or she volunteered or signed up for and worked extra hours, lengthy shifts, and undesirable nights, weekends and holidays are either "nonrecurring pay increases," "bonuses and incentive-type payments," or "other payments not considered part of the regular salary base" that are not subject to withholding and diversion under PEBA's instructions and the Employee Contribution Law.

c. That the Defendants' withholding and diversion of wages earned by Luce and the Putative Class since October 2019 when they have volunteered or signed up for and worked extra hours, lengthy shifts, and undesirable nights, weekends and holidays in exchange for the Excluded Wages constitutes an unlawful taking of private property without just compensation in violation of the Fifth Amendment to the United States Constitution and Article I, Section 13(A) of the South Carolina Constitution.

d. That the Defendants' withholding and diversion of wages earned by Luce and the Putative Class since October 2019 when they have volunteered or signed up for and worked extra hours, lengthy shifts, and undesirable nights, weekends and holidays in exchange for the Excluded Wages constitutes an unlawful violation of S.C. Code

§ 41-10-40.

e.  That Luce and the Putative Class are entitled to receive immediate payment from Defendants of all earned wages that Defendants have withheld from Luce and the Putative Class since November 4, 2019, together with prejudgment interest and an award of costs of this action and reasonable attorneys' fees.

61.     Luce and the Putative Class are entitled to an award of costs, including reasonable attorneys' fees, for obtaining this declaratory relief.

**FOR A SECOND CAUSE OF ACTION**
**(Claim for Injunctive Relief)**

62.     All foregoing paragraphs are incorporated herein verbatim.

63.     As a result of Defendants' refusal to cease their unlawful withholding and diversion of a percentage of Excluded Wages earned by Luce and the Putative Class, they have suffered and will continue to suffer irreparable and immediate harm and injury to their property and rights under the Fifth Amendment to the United States Constitution, Article I, Section 13(A) of the South Carolina Constitution, and the South Carolina Payment of Wages Act.

64.     Defendants' withholding and diversion of earned wages described above deprives Luce and the Putative Class of their rightfully earned income in violation of State and federal law, the Fifth Amendment to the United States Constitution and Article I, Section 13(A) of the South Carolina Constitution.

65.     Defendants are obligated to refrain from infringing upon Luce and the Putative Class's constitutional rights and unlawfully withholding and diverting their earned wages.

66.     Luce and the Putative Class are entitled to a preliminary and permanent injunction against Defendants preventing for all time LMC's unlawful withholding and diversion of a percentage of their Excluded Wages to PEBA for use by SCRS.

67.     As stated above, Luce has spent over six (6) months seeking intervention and help from members of LMC's accounting department and Payroll Group, Accounting Manager Lynn Coggins, Vice President of Operations Jay Hamm, Vice President of Human Resources Brian Smith, LMC's legal department, and PEBA, all to no avail. Therefore, unless Defendants are compelled to refrain from their unlawful taking and diversion of Luce and the Putative Class's earned wages, Defendants intend to continue this unconstitutional and unlawful misconduct.

68.     Neither Luce nor any member of the Putative Class has any plain, speedy, or adequate remedy at law to correct Defendants' unlawful conduct and prevent having their earned wages continued to be withheld and diverted to PEBA for use by SCRS; therefore, prospective injunctive relief is necessary to protect Luce and the Putative Class from imminent harm.

69.     The balance of harm favors Luce and the Putative Class because an injunction would actually **save** LMC from harm,[5] poses no cognizable harm to Smith or Coggins, and merely requires Defendants to stop withholding wages earned by and due to Luce and the Putative Class and diverting those to PEBA for SCRS, whose assets as of June 30, 2022, exceeded $32.8 billion. Therefore, there is no imminent threat to public health, safety, welfare such that would justify the impose upon Luce and the Putative Class by continuing to allow Defendants to ignore the Employee Contribution Law merely for their own convenience any longer.

70.     Luce and the Putative Class are entitled to an award of costs, including reasonable attorneys' fees, for obtaining this injunctive relief.

---

[5] LMC's employer contribution is currently 17.41% of "earnable compensation" per S.C. Code §§ 9-1-1050 and 9-10-1085; LMC is currently **overpaying** its own contribution to PEBA for SCRS by mischaracterizing Luce and the Putative Class's Excluded Wages as "overtime pay" "mandated by" the employer.

### FOR A THIRD CAUSE OF ACTION
**(42 U.S.C. § 1983 – Claim for Monetary Awards)**

71.     All foregoing paragraphs are incorporated herein verbatim.

72.     Luce and each member of the Putative Class has a property interest in his or her earned wages that is protected under the Fifth Amendment to the United States Constitution, made applicable to the State through the Fourteenth Amendment of the United States Constitution.

73.     LMC has adopted and enforced policies, practices and customs whereby it has systemically withheld and diverted a percentage of Luce and the Putative Class's Excluded Wages to PEBA for use by SCRS, which PEBA uses to fund SRCS's liabilities, e.g., the provision of benefits to its hundreds of thousands of members.

74.     Smith and Coggins are directly and personally involved in the withholding and diversion of Luce and the Putative Class's earned wages. As officers or managers of LMC in the accounting or human resource departments, Smith and Coggins have directed and enforced LMC's unlawful policies, practices and customs of treating all "overtime" as "mandatory" whether it is or not; of treating Excluded Wages as "overtime pay" "mandated by" LMC even for exempt employees; and of withholding and diverting a percentage of Luce and the Putative Class's earned wages to PEBA for use by SCRS in violation of State law and PEBA's instructions.

75.     Even after being placed on direct notice of Luce's report of misconduct, Smith and Coggins have refused to intervene and either prevent the ongoing withholding or diversion of a percentage of  Luce and the Putative Class's Excluded Wages to PEBA for use by SCRS or cause LMC to issue the payment of earned wages due to Luce and the Putative Class.

76.     Because the Fifth Amendment provides that Luce and the Putative Class's private property shall not be taken for public use without just compensation, Luce and the Putative Class are properly regarded as having been "deprived of a right secured by the Constitution" within the

meaning of 42 U.S.C. § 1983.

77.     Defendants have, at all times relevant to this Complaint, acted under the color of the Employee Contribution Law, PEBA's instructions, and its own policies, practices and customs while they unlawfully withheld diverted Luce and the Putative Class's earned wages to PEBA for use by SCRS.

78.     As a result, Luce and the Putative Class are entitled to recover nominal, actual and compensatory damages from all Defendants, as well as an award of prejudgment interest, the costs of this action, and reasonable attorneys' fees.

79.     Because Smith and Coggins have acted in a reckless manner and with callous indifference to Luce and the Putative Class's federally protected right to receive their earned wages, Luce and the Putative Class are also entitled to an award of punitive damages against Smith and Coggins in their individual capacities.

### FOR A FOURTH CAUSE OF ACTION
### (South Carolina Payment of Wages Act – Claim for Monetary Awards)

80.     All foregoing paragraphs are incorporated herein verbatim.

81.     Since November 4, 2019, LMC, Smith and Coggins have each been an "employer" of Luce and the Putative Class as defined in S.C. Code § 41-10-10(1).

82.     Since November 4, 2019, the percentage of Excluded Wages that Defendants have withheld from Luce and the Putative Class and diverted it to PEBA for use by SCRS constituted "wages" as defined in S.C. Code § 41-10-10(2).

83.     Since November 4, 2019, Defendants have violated S.C. Code §§ 41-10-40 each time that they have enforced LMC's policies, practices and customs of withholding a percentage of Excluded Wages earned by Luce and the Putative Class and diverting those wages to PEBA for use by SCRS.

84.     Since November 4, 2019, Defendants had no good faith wage dispute or basis to mischaracterize all "overtime" worked at LMC as employer-mandated, or to mischaracterize the Excluded Wages earned by Luce and the Putative Class as "overtime pay" "mandated by" LMC. These unlawful policies, practices and customs are in plain violation of the intent of Act 278 and the Employee Contribution Law, and Defendants adhere to and enforce these policies, practices and customs merely to simplify their payroll process. Therefore, Luce and the Putative Class are entitled to an award of treble damages, costs, and reasonable attorney's fees under S.C. Code § 41-10-80(C).

## PRAYER FOR RELIEF

Wherefore, Luce demands a jury trial on all causes of action so triable, and prays that the court enter the following:

(1) an order certifying this action as a class action pursuant to Rule 23(b)(1)(A), (b)(1)(B), or (b)(2), and appointing Luce and his counsel to represent the Putative Class;

(2) the Declarations set forth above, which establish that the Defendants' policies, practices and customs of mischaracterizing earned wages as "overtime pay" "mandated by" LMC and diverting those wages to PEBA for use by SCRS violates the Takings Clause of the Fifth Amendment to the United States Constitution, Article I, Section 13(A) of the South Carolina Constitution, and the South Carolina Payment of Wages Act;

(3) a temporary and permanent injunction that prevents the Defendants from continuing their policies, practice and customs of mischaracterizing Luce's and the Putative Class's earned wages as "overtime pay" "mandated by" LMC and diverting those wages to PEBA for use by SCRS, and provides that this court shall retain jurisdiction over this matter to ensure Defendants' compliance with these mandates;

(4) judgment in favor of Luce and the Putative Class against Defendants for an award of nominal damages; actual and compensatory damages; treble damages; prejudgment interest; and the costs of this action, including reasonable attorneys' fees;

(5) judgment in favor of Luce and the Putative Class against Smith and Coggins, in their individual capacities, for punitive damages;

(6) and other and further relief as this Court may deem just and proper.

Respectfully submitted on November 4, 2022.

s/ Shaun C. Blake
Shaun C. Blake (S.C. Fed. ID 10358)
Jenkins M. Mann (S.C. Fed. ID 9986)
P. Wesley Jackson (S.C. Fed. ID 12685)
ROGERS LEWIS JACKSON MANN & QUINN, LLC
1901 Main Street, Suite 1200
Columbia, SC 29201
Phone: 803-256-1268
Email: sblake@rogerslewis.com
         jmann@rogerslewis.com
         wjackson@rogerslewis.com

&

Bryan D. Caskey (S.C. Fed. ID 10203)
Alexander S. Imgrund (S.C. Fed. ID 12808)
CASKEY & IMGRUND, LLC
1534 Blanding Street
Columbia, SC 29201
(803) 708-3252
Email: bryan@cilawsc.com
         alex@cilawsc.com

ATTORNEYS FOR PLAINTIFF AND PUTATIVE CLASS